## MATTER OF BAKER

### In Deportation Proceedings

### A-20224363

*Decided by Board August 8, 1974*

Conviction in the Virgin Islands of assault in the third degree in violation of 14 V.I.C. 297 (1964), as amended (Supp. 1973), resulting in a sentence to 2 1/2 years' imprisonment, is conviction of a crime involving moral turpitude within the meaning of section 241(a)(4) of the Immigration and Nationality Act, as amended. This is true notwithstanding the statute under which the conviction occurred contains five different subdivisions and the judgment of conviction does not specify under which subdivision the conviction is based, since all five subdivisions involve moral turpitude.

CHARGE:

Order: Act cf 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted of crime involving moral turpitude within five years after entry.

ON BEHALF OF RESPONDENT: James Pomeroy Hendrick, Esquire
Mt. Welcome, Above Gallows Bay
P.O. Box 2931
Christiansted, St. Croix
U.S. Virgin Islands 00802

This is an appeal from the November 15, 1972 decision of the immigration judge in which he found the respondent deportable as charged and ineligible for any discretionary relief. The immigration judge ordered that the respondent be deported to Montserrat, British West Indies. The appeal will be dismissed.

The alien respondent, a native of Montserrat, British West Indies, and a citizen of Great Britain, last entered the United States on September 12, 1970. He was convicted in the Virgin Islands, on a plea of not guilty, of assault in the third degree, committed on June 3, 1972, and was sentenced to two and one-half years imprisonment. Section 241(a) of the Immigration and Nationality Act provides, in pertinent part: "Any alien in the United States . . . shall, upon the order of the Attorney General, be deported who— . . . (4) is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more . . . ."

The only issue to be decided is whether or not the crime of which the respondent was convicted is a crime involving moral turpitude, since it was committed within five years after entry and he was sentenced to confinement in prison for a year or more.

Crimes involving moral turpitude have been described as crimes which shock the public conscience; crimes of violence, inherent baseness, vileness, or depravity. *U.S. ex rel. DeGeorge* v. *Jordan*, 183 F.2d 768 (C.A. 7, 1950), reversed 341 U.S. 223 (1951); *U.S. ex rel. Manzella* v. *Zimmerman*, 71 F. Supp. 534, 537 (E.D. Pa., 1947). "It is the inherent nature of the crime as defined by the statute or interpreted by the courts and as limited and described by the record of conviction which determines whether the offense is one involving moral turpitude." *Matter of H—*, 7 I. & N. Dec. 616, 618 (BIA 1957).

The respondent was convicted of assault in the third degree, pursuant to 14 V.I.C. 297 (1964), as amended (Supp. 1973), which provides as follows:

Whoever, under circumstances not amounting to an assault in the first or second degree—

(1) assaults another person with intent to commit a felony;

(2) assaults another with a deadly weapon;

(3) assaults another with premeditated design and by use of means calculated to inflict great bodily harm;

(4) assaults another and inflicts serious bodily injury upon the person assaulted; or whoever under any circumstances; [sic]

(5) assaults a peace officer in the lawful discharge of the duties of his office with a weapon of any kind, if it was known or declared to the defendant that the person assaulted was a peace officer discharging an official duty;— shall be fined not more than $500 or imprisoned not more than 5 years or both.

Although the conviction record does not mention the use of a weapon, the respondent stated at the deportation hearing that he had used a partly full beer bottle, from which he had been drinking, to strike the victim. Transcript, pp. 7-8. A glass bottle can be a dangerous weapon. See *Matter of R—*, 1 I. & N. Dec. 353 (BIA 1942).

Simple assault is not considered to be a crime involving moral turpitude. *U.S. ex. rel. Zaffarano* v. *Corsi*, 63 F.2d 757, 758 (C.A. 2, 1933); *Ciambelli ex rel. Maranci* v. *Johnson*, 12 F.2d 465 (D. Mass., 1926); *Matter of B—*, 5 I. & N. Dec. 538 (BIA 1953). 14 V.I.C. 299 (1964), provides a maximum sentence of 30 days or $50 or both for simple assault and battery. Although it is not clear under which subsection of the third degree assault provision the respondent was convicted, the crime of which he was found guilty was evidently more serious than a simple assault and battery. The greater gravity of third degree assault is evidenced by the specific intent required in subsections (1) and (3), the use of a weapon specified in subsections (2) and (5), the serious injury recited in subsection (4), the more severe penalty which may be imposed

for conviction under any of the several subsections, and the fact that the crime is a felony. Because these crimes are more serious than simple assault and battery, we find that they all involve moral turpitude. Consequently, it does not matter under which subsection the respondent was convicted, for all of the subsections involve moral turpitude.

We, therefore, agree with the conclusion of the immigration judge that the respondent was convicted of a crime involving moral turpitude.

ORDER: The appeal is dismissed.

**Louisa Wilson, Member, Dissenting:**

I respectfully dissent.

The majority has correctly stated the facts and the issue of this case. However, I must reject the conclusion drawn and the reasoning leading to that conclusion. It does not seem to me that the Immigration and Naturalization Service has established by evidence which is clear, convincing, and unequivocal that the respondent has been convicted of a crime involving moral turpitude. Therefore, the appeal should be sustained and the proceedings terminated.

*Matter of H—*, 7 I. & N. Dec. 616 (BIA 1957), quoted in the majority opinion, states the following: "It is the *inherent nature* of *the crime* as *defined by the statute* or interpreted by the courts and *as limited and described by the record of conviction* which determines whether the offense is one involving moral turpitude." (Emphasis supplied.) *Id.* at 618.

14 V.I.C. 297 (1964), as amended (Supp. 1973), assault in the third degree, the statute under which the respondent was convicted, is a divisible statute. It is nowhere stated under which subsection of this statute the respondent was convicted. Therefore, we must look beyond the statute itself to ascertain whether or not the conviction was for a crime involving moral turpitude. However, since this proceeding is based on section 241(a)(4) of the Immigration and Nationality Act, we must limit our efforts to define the nature of the crime of which the respondent was convicted to a consideration of the conviction record. [1] The conviction record consists of the charge, plea, verdict or judgment, and sentence. *Matter of Lopez*, 13 I. & N. Dec. 725, 726 (BIA 1971). Since the respondent was charged by information under 14 V.I.C. 295(3) (1964) for assault in the first degree [2], but pleaded not guilty and was not convicted therefor, it is necessary to eliminate from our considera-

---

[1] The situation would be slightly different in a case where the alien was charged under sections 241(a)(1) and 212(a)(9) of the Act, where actual conviction may not be necessary.

[2] "Whoever—. . . (3) with intent to commit rape, sodomy, mayhem, robbery or larceny, assaults another—shall be imprisoned not more than 15 years."

tion of the charge those parts which are pertinent to first degree assault but not to third degree assault.

In the information it is alleged that the respondent "did, with intent to commit mayhem, assault one [name of person assaulted] by cutting him on the chest and wrist, causing serious bodily injury, in violation of Title 14 V.I.C., §295(3)." If the respondent had been found guilty of assault with intent to commit mayhem, he would have been convicted of assault in the first degree. He was not so convicted, although the immigration judge evidently thought he was. (Transcript p. 9.) Conviction of a lesser included offense is acquittal of the higher offense. *U.S. ex rel, Valenti v. Karnuth,* 1 F. Supp. 370, 375 (M.D.N.Y. 1932); *Matter of V—T—,* 2 I. & N. Dec. 213, 216–17 (BIA 1944); cf. *Matter of W—,* 4 I. & N. Dec. 241 (BIA 1951). What remains of the charge appears to be consonant with the language of subsection (4) of section 297, which is set out in the majority opinion. This subsection, unlike subsections (1) and (3), does not necessarily involve any intent beyond that inherent in a simple assault charge. Simple assault is not considered to be a crime involving moral turpitude. *U.S. ex rel. Zaffarano v. Corsi,* 63 F.2d 757, 758 (C.A. 2, 1933); *Ciambelli ex rel. Maranci v. Johnson,* 12 F.2d 465 (D. Mass., 1926); *Matter of B—,* 5 I. & N. Dec. 538 (BIA 1953). Unlike subsections (2) and (5), subsection (4) contains no reference to a weapon.[3] Subsection (4) refers to the injury suffered rather than to the intent, but it is in the intent that moral turpitude inheres. *U.S. ex rel. Meyer v. Day,* 54 F.2d 336, 337 (C.A. 2, 1931); *U.S. ex rel. Shladzien v. Warden,* 45 F.2d 204, 205–6 (E.D. Pa., 1930); see *Matter of L—,* 2 I. & N. Dec. 54 (BIA 1944).

Thus, the statute in question includes at least one offense which does not necessarily involve moral turpitude. If a statute includes offenses in which moral turpitude does not necessarily inhere, and if it is not clear from the conviction record under which subsection the respondent was convicted, then the respondent is not deportable, even though in the particular instance his conduct may have been immoral. *Ablett v. Brownell,* 240 F.2d 625, 627 (D.C. Cir., 1957); *U.S. ex rel. Robinson v. Day,* 51 F.2d 1022 (C.A. 2, 1931); *U.S. ex rel. Mylius v. Uhl, supra,* note 2; *Forbes v. Brownell,* 149 F. Supp. 848, 850–51 (D. D.C., 1957); *Matter of N—,* 8 I. & N. Dec. 466 (BIA 1959).

Without distinguishing or even mentioning the above-cited decisions,

---

[3] The respondent testified at his deportation hearing that he had struck the victim with a partly full beer bottle; however, the conviction record contains no mention of a weapon. Therefore, it does not appear that the conviction was based on the use of a weapon. In any case, it is improper to look beyond the conviction record to find moral turpitude. *U.S. ex rel. Guarino v. Uhl,* 107 F.2d 399, 400 (C.A. 2, 1939); *U.S. ex rel. Mylius v. Uhl,* 210 F. 860, 862–63 (C.A. 2, 1914); *Zgodda v. Holland,* 184 F. Supp. 847, 851 (E.D. Pa., 1960); *Vidal y Planas v. Landon,* 104 F. Supp. 384, 389 (S.D. Cal., 1952); *U.S. ex rel. Manzella v. Zimmerman,* 71 F. Supp. 534, 536 (E.D. Pa., 1947).

the majority goes beyond the conviction record to consider the respondent's testimony at the deportation hearing. When an alien is to be deported on the basis of *conviction* for a crime involving moral turpitude, we may look only at what he was *convicted* of, not at what he may have testified to at a deportation hearing. A deportation hearing is not a criminal trial, and it is improper to retry a criminal case in a deportation proceeding.

The majority states that the crime of which the respondent was convicted was "more serious than a simple assault and battery." This may be true, but moral turpitude is found in the *intent* with which a crime is committed, not in the "seriousness" of that crime. As pointed out above, the respondent appears to have been convicted under subsection (4) of the third degree assault statute. That subsection does not require any intent to injure beyond that required for *any* assault, including *simple assault*, which is not considered to be a crime involving moral turpitude. *U.S. ex rel. Zaffarano v. Corsi; Ciambelli ex rel. Maranci v. Johnson*, 12 F.2d 465 (D. Mass., 1926); *Matter of B—*, 5 I. & N. Dec. 538 (BIA 1953); *Matter of E—*, 1 I. & N. Dec. 505, 507 (BIA 1943); *U.S. ex rel. Moracci v. Smith*, 8 F.2d 663 (W.D. N.Y., 1925).

While subsection (4) is included in the same statute with other crimes, some of which probably do involve moral turpitude (because of the stated specific intent and the use of means calculated to inflict great bodily harm or because of the intent inferred from the use of a dangerous weapon), and while this may indeed show that the legislature considered all of these crimes to be of comparable "seriousness" and of greater "seriousness" than simple assault and battery, it cannot be assumed that the added seriousness results from the presence of moral turpitude. It often happens that one statute includes both crimes which do involve moral turpitude and crimes which do not. When that occurs, since the burden to prove deportability is upon the Service, we must take the case in the light most favorable to the respondent and assume that he was convicted of a crime that does *not* involve moral turpitude, *Matter of Lopez, supra*, at 727; *Matter of Espinosa*, 10 I. & N. Dec. 98, 100 (BIA 1962). This the majority has not done.

The immigration judge states in his opinion that "assault of an aggravated nature with the use of a deadly or dangerous weapon and with the intent to inflict bodily harm is a crime involving moral turpitude." Decision of the immigration judge, pp. 2–3. This is true. But it is not stated in the conviction record that the respondent was convicted of such an assault.

Accordingly, it does not appear to me that the crime of which the respondent was convicted necessarily involves moral turpitude. Reading the statute at its minimum, we must conclude that the respondent is not deportable as charged.

The appeal should be sustained and the proceedings terminated.

**Maurice A. Roberts, Chairman, Dissenting:**

I join in the foregoing dissenting opinion.

The decision reached by the majority respresents, in my view, an example of result-oriented decision-making. The unarticulated premise of the majority opinion seems to be that a person like the respondent, who has received a two and a half year sentence for a serious crime, is a bad person who should be deported. Not every serious crime, however, necessarily involves moral turpitude or calls for deportation.

No alien may be deported unless he clearly fits within one of the categories of deportable aliens specified by Congress. In determining whether an alien comes within any of those classes, certain well-defined principles have emerged through the years. Unless the alien is found to be within one of the deportable classes in the light of those principles, his deportation may not be ordered, no matter how unworthy or bad or immoral we may personally think him to be. We are bound to apply the rule of law.

Deportation statutes, because of their drastic consequences, must be strictly construed, *Barber v. Gonzales*, 347 U.S. 637, 642–643 (1954); *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948). In section 241(a)(4) of the Immigration and Nationality Act, Congress has prescribed deportation if an alien is convicted of "a crime involving moral turpitude" committed within five years of entry. It is the crime of which he is convicted, and not the alien's conduct, which determines deportability. If the crime of which he is convicted does not inherently involve moral turpitude, he may not be deported even if his actual conduct was immoral, *U.S. ex rel. Robinson v. Day*, 51 F.2d 1022 (C.A. 2, 1931); *Ablett v. Brownell*, 240 F.2d 625, 627 (D.C. Cir., 1957); *U.S. ex rel. Giglio v. Neelly*, 208 F.2d 337 (C.A. 7, 1953). On the other hand, if the crime of which he was convicted does involve moral turpitude, deportability is established even if the alien's actual conduct as he later describes it might not seem so reprehensible, *U.S. ex rel. Manzella v. Zimmerman*, 71 F. Supp. 534 (E.D. Pa., 1947). In other words, it is the alien's *crime*, and not his *conduct*, which is determinative under section 241(a)(4).

Whether or not a particular offense involves moral turpitude depends upon the ingredients of the crime, the elements which must be proved to establish guilt. If those ingredients necessarily involve baseness, vileness, depravity, an evil intent which shocks the public conscience, the crime involves moral turpitude, *Guerrero de 'Nodahl v. INS*, 407 F.2d 1405, 1406–07 (C.A. 9, 1969). To determine the nature of the crime, we must look primarily to the statutory definition of the offense, or, if it is

undefined, to the court decisions which define its elements, *U.S. ex rel Zaffarano* v. *Corsi*, 63 F.2d 757 (C.A. 2, 1933). If the crime as defined by the statute under all circumstances encompasses conduct which involves moral turpitude, the crime involves moral turpitude, *U.S. ex rel. Guarino* v. *Uhl*, 107 F.2d 399 (C.A. 2, 1939). If the crime as defined by statute punishes conduct which may or may not be turpitudinous, and if it is not clear under which aspect of the statute the conviction was rendered, the definition of the crime must be taken at its minimum, *i.e.*, as not involving moral turpitude, *U.S. ex rel. Manzella* v. *Zimmerman*, 71 F. Supp. 534 (E.D. Pa., 1947).

If the charge is a violation of a statute in general terms, and the statute itself is divided into specified subdivisions, each of which necessarily involves moral turpitude, the crime obviously involves moral turpitude. If only some of the subdivisions of a divisible statute involve moral turpitude, then under the rule of strict construction the crime does not involve moral turpitude unless it can be established that the offense as charged was geared to one of the subdivisions involving moral turpitude, *Wadman* v. *INS*, 329 F.2d 812 (C.A. 9, 1964).

Reference can be had to the record of conviction (the indictment or information, the plea, the verdict or judgment, and the sentence) to establish under which subdivision the defendant was charged, *U.S. ex rel. Zaffarano* v. *Corsi*, 63 F.2d 757 (C.A. 2, 1933).

In all cases, the nature of the offense and the guilt of the alien can be determined only by the record of conviction. The alien cannot be heard at the deportation hearing to testify that he was not guilty of the offense, or that his actions were actually different from those described in the record of conviction. The criminal case cannot be retired in the deportation proceedings, *Zgodda* v. *Holland*, 184 F. Supp. 847 (E.D. Pa., 1960). Similarly, if the crime as made out by the record of conviction does not involve moral turpitude, the testimony of the alien at the deportation hearing cannot be accepted to prove that his conduct was actually turpitudinous.

Applying these principles, it seems to me that the offense of which the respondent was charged cannot be said to involve moral turpitude. When it comes to assault and battery, whether or not moral turpitude is involved is largely a matter of intent. Simple assault and battery does not involve moral turpitude, *Ciambelli ex rel. Maranci* v. *Johnson*, 12 F.2d 465 (D. Mass., 1926); *Matter of B—*, 5 I. & N. Dec. 538 (BIA 1953). Assault with intent to kill does, *Clark* v. *Orabona*, 59 F.2d 187 (C.A. 1, 1932), cert. denied 287 U.S. 629; *U.S. ex rel. Shladzien* v. *Warden*, 45 F.2d 204 (E.D. Pa., 1930). So does assault with a deadly weapon or one likely to inflict great bodily harm, *Gonzales* v. *Barber*, 207 F.2d 398 (C.A. 9, 1953).

Respondent was convicted of assault in the third degree. As the crime

is defined in the Virgin Islands statute before us, five different types of conduct are covered. Categories (1), (2), (3) and (5) must be ruled out. There is nothing in the record of conviction to show either that (1) there was an intent to commit a felony; or (2) that a deadly weapon was used; or (3) that there was a premeditated design and that respondent used means calculated to inflict great bodily harm; or (5) that the victim was a peace officer and that a weapon was used. This leaves the fourth subdivision as the only possible basis for the third degree assault charge. Although that subdivision is obviously different from simple assault and battery, the difference does not lie in the intent involved but in the nature of the resultant injury. Under the fourth subdivision, it is the serious bodily injury which results from the assault, and not the intent with which the assault was committed, that is determinative. A simple assault and battery which unintentionally results in serious bodily injury is within the ambit of the fourth subdivision. Absent the evil intent which goes beyond simple assault and battery, the crime defined by the fourth subdivision cannot be said to involve moral turpitude; the gravity of the punishment is not controlling, *U.S. ex rel. Zaffarano* v. *Corsi*, 63 F.2d 757 (C.A. 2, 1933); *Gonzales* v. *Barber*, 207 F.2d 398 (C.A. 9, 1953).

The respondent's testimony at the deportation hearing that he struck the victim with a partly full beer bottle from which he had been drinking does not supply the missing link to moral turpitude. The nature of the offense must be determined from the conviction record, not from the alien's testimony at the deportation hearing, *U.S. ex rel. Mylius* v. *Uhl*, 210 Fed. 860 (C.A. 2, 1914); *U.S. ex rel. Manzella* v. *Zimmerman*, 71 F. Supp. 534 (E.D. Pa., 1947). In relying for its decision on such testimony given at the deportation hearing, the majority recedes from a long and well-established principle and sets a precedent which may turn out to be unfortunate in many ways. If the testimony of an alien may be adduced to prove that the crime of which he was convicted did involve moral turpitude, no reason appears why an alien should not be permitted to testify as to facts indicating that the crime did not involve moral turpitude. The net result will be to open the door to retrial in the deportation hearing of the question of the nature of the crime and whether the alien was actually guilty of the crime. This is a major and unwarranted departure from precedents which have stood the test of time.

Since I conclude that the Service has not borne its burden of proving by clear, convincing and unequivocal evidence that the respondent was convicted of a crime involving moral turpitude, I would sustain the appeal and terminate the proceedings.